UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRYSTAL ELLIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DANA ALEXANDER, BARBARA WEST, )<br>ROBERT KLICH, GARY YAMASHIROYA, )<br>JOHN E. ROBERTS, BRYAN J. HOLY, ERIC A. )<br>REYES, DANIEL R. JENSEN, ROSS K. TAKAKI, )<br>MARK A. REGAL, BRIAN S. SPAIN, LUIS )<br>GONZALEZ, DANIEL DURST, KEVIN KEEFE, )<br>JEFFREY ALLEN, FLOYD GOLDSMITH, )<br>JANE DOE # 1 now known as ALMA )<br>RODRIGUEZ, MARINA MAKROPOULOS, )<br>JOHN DOE # 1, BRANDON L. DOUGHERTY, )<br>JANE DOE #2 now known as ELIZABETH )<br>SALGADO, JONATHAN J. ELARDE, SERGUEY )<br>KLEMENS, TIMOTHY M. HAWKINS, )<br>MICHAEL WALSH, JR., NATHANIEL )<br>WARNER, and CITY OF CHICAGO, )<br>)<br>Defendants. ) | Case No. 16 C 5155<br><br>Judge John J. Tharp<br><br>Magistrate Judge Mary M. Rowland<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED CIVIL RIGHTS COMPLAINT

Plaintiff, KRYSTAL ELLIS, by and through her attorney, Irene K. Dymkar, complaining against defendants, DANA ALEXANDER, BARBARA WEST, ROBERT KLICH, GARY YAMASHIROYA, JOHN E. ROBERTS, BRYAN J. HOLY, ERIC A. REYES, DANIEL R. JENSEN, ROSS K. TAKAKI, MARK A. REGAL, BRIAN S. SPAIN, LUIS GONZALEZ, DANIEL DURST, KEVIN KEEFE, JEFFREY ALLEN, FLOYD GOLDSMITH, JANE DOE # 1 now known as ALMA RODRIGUEZ, MARINA MAKROPOULOS, JOHN DOE # 1, BRANDON L. DOUGHERTY, JANE DOE #2 now known as ELIZABETH SALGADO, JONATHAN J. ELARDE, SERGUEY KLEMENS, TIMOTHY M. HAWKINS, MICHAEL WALSH, JR., NATHANIEL WARNER, and CITY OF CHICAGO, states as follows:

## NATURE OF CLAIM

1. This action arises under the United States Constitution and the laws of the United States, specifically the Civil Rights Act of 1871 (42 U.S.C. § 1983), to redress deprivations of the civil rights of plaintiff through acts and/or omissions of defendants committed under color of law. Specifically here, defendants deprived plaintiff of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

2. Jurisdiction is based upon 28 U.S.C. §§ 1343, 1331, and 1367.

3. Venue lies in the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. § 1391, because all events or omissions giving rise to this claim occurred in this district.

## PARTIES

4. At all times herein mentioned, plaintiff, KRYSTAL ELLIS, was and is a citizen of the United States and resides within the jurisdiction of the court.

5. At all times herein mentioned, defendants DANA ALEXANDER (hereinafter ALEXANDER), BARBARA WEST (hereinafter WEST), ROBERT KLICH (hereinafter KLICH), GARY YAMASHIROYA (hereinafter YAMASHIROYA), JOHN E. ROBERTS (hereinafter ROBERTS), BRYAN J. HOLY (hereinafter HOLY), ERIC A. REYES (hereinafter REYES), DANIEL R. JENSEN (hereinafter JENSEN), ROSS K. TAKAKI (hereinafter TAKAKI), MARK A. REGAL (hereinafter REGAL), BRIAN S. SPAIN (hereinafter SPAIN), LUIS GONZALEZ (hereinafter GONZALEZ), DANIEL DURST (hereinafter DURST), KEVIN KEEFE (hereinafter KEEFE), JEFFREY ALLEN (hereinafter ALLEN), FLOYD GOLDSMITH (hereinafter GOLDSMITH), JANE DOE # 1 now known as ALMA RODRIGUEZ (hereinafter RODRIGUEZ), MARINA MAKROPOULOS (hereinafter MAKROPOULOS), JOHN DOE # 1, BRANDON L. DOUGHERTY (hereinafter DOUGHERTY), JANE DOE #2 now known as ELIZABETH SALGADO

(hereinafter SALGADO), JONATHAN J. ELARDE (hereinafter ELARDE), SERGUEY KLEMENS (hereinafter KLEMENS), TIMOTHY M. HAWKINS (hereinafter HAWKINS), MICHAEL WALSH, JR. (hereinafter WALSH, and NATHANIEL WARNER (hereinafter WARNER) were officers in the Chicago Police Department and were acting under color of state law and as the employees or agents of the City of Chicago, Illinois. They are being sued in their individual capacity.

6. JANE DOE #1 was previously described as the female officer to the left in the photograph at Exhibit A, carrying a rifle. She has been identified by the CITY OF CHICAGO as ALMA RODRIGUEZ. JANE DOE #2 was previously described as the female officer to the right in the photograph at Exhibit A, also carrying a rifle. She has been identified by the CITY OF CHICAGO as ELIZABETH SALGADO. JOHN DOE #1 is believed to be either the male partner of JANE DOE #2, or a male officer who rode in the police vehicle with JANE DOE #2.

7. Defendant CITY OF CHICAGO is a municipal corporation, duly organized under the laws of the State of Illinois. Defendant CITY OF CHICAGO maintained, managed, and/or operated the Chicago Police Department and employed defendant police officers.

8. Defendant CITY OF CHICAGO had and has express and implied policies and procedures, and customs and practices so persistent and well-settled so as to be *de facto* official policies and procedures, which not only caused but were the moving force behind the deprivation of constitutional rights set forth herein. Defendant CITY OF CHICAGO thus is being sued for direct municipal liability under *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018 (1978).

## STATEMENT OF FACTS

9. On May 11, 2014, plaintiff, KRYSTAL ELLIS, was with her boyfriend and partner, Gary J. Smith.

10. KRYSTAL ELLIS and Gary J. Smith were near the intersection of West Madison and North Lotus, in Chicago, Illinois, at approximately 2:30 AM.

11. Gary J. Smith was shot multiple times by one or more Chicago police officers near the intersection of West Madison and North Lotus, in Chicago, Illinois, at approximately 2:30 AM.

12. Gary J. Smith had not committed any crimes, was not committing any crimes, and was not about to commit any crimes at the time he was shot.

13. Gary J. Smith died from the multiple gun shot wounds he suffered.

14. After Gary J. Smith was shot, KRYSTAL ELLIS was not allowed to give aid to or comfort Mr. Smith, or grieve over Mr. Smith, as he lay bleeding on the ground.

15. KRYSTAL ELLIS was ordered by defendant Chicago police officers to stand a distance away from Mr. Smith.

16. KRYSTAL ELLIS was told by defendant Chicago police officers that she was not allowed to leave the scene.

17. Some police official(s) named as a defendant(s) instructed Chicago police officers to detain Ms. ELLIS.

18. There was no probable cause to believe that Ms. ELLIS had committed a crime.

19. There was no reasonable suspicion to believe that Ms. ELLIS had committed a crime.

20. Ms. ELLIS was detained under the guard of Chicago police officers immediately after the shooting.

21. Defendants ELARDE and KLEMENS were two of the officers who were guarding and detaining Ms. ELLIS.

22. Chicago Police and CITY OF CHICAGO reports identify ELARDE and KLEMENS were two of the officers who were guarding and detaining Ms. ELLIS.

23. After some time, Ms. ELLIS was grabbed by two defendant officers and told she was not free to go, but had to come to the police station.

24. Some police official(s) named as a defendant(s) had instructed these two officers to take into Ms. ELLIS into custody.

25. Ms. ELLIS was taken away from her dying boyfriend and partner against her will and without her consent.

26. A defendant officer ordered Ms. ELLIS to give her Ms. ELLIS's car keys, which she did.

27. That defendant officer went into Ms. ELLIS's vehicle and searched it, without Ms. ELLIS's consent.

28. That defendant officer seized Ms. ELLIS's purse and cell phone from her vehicle and left the vehicle unlocked.

29. That defendant officer or some other defendant officer searched Ms. ELLIS's purse, and searched or manipulated her cell phone.

30. Ms. ELLIS was placed in a police vehicle by two officers.

31. Defendants MAKROPOULOS, DOUGHERTY, HAWKINS, WALSH, and WARNER took a witness from the scene of the police shooting of Gary J. Smith in custody to the police station.

32. Chicago Police and CITY OF CHICAGO reports state that defendants MAKROPOULOS, DOUGHERTY, HAWKINS, WALSH, and WARNER took witnesses from the scene of the police shooting of Gary J. Smith in custody to the police station.

33. Upon information and belief, defendants ELARDE and KLEMENS drove Ms. ELLIS to the police station.

34. Once Ms. ELLIS arrived at the police station, she was locked in a room.

35. Ms. ELLIS banged on the door distraught, begging to be let out.

36. Ms. ELLIS remained in custody for 7+ hours.

37. Ms. ELLIS was not free to leave during the time she was in the police station.

38. At some point, a defendant detective came into the room where Ms ELLIS was held, to question her.

39. Ms. ELLIS does not know this detective's name, but upon information and belief based on Chicago police reports, this detective was defendant ERIC A. REYES.

40. This detective relentlessly grilled and badgered Ms. ELLIS, and tried to force her to say that Gary J. Smith had a gun, when that was not true.

41. This intense questioning was against Ms. ELLIS's will and she did not consent to this intense questioning.

42. Ms. ELLIS pleaded with this detective to be told something about the condition of Mr. Smith and to be allowed to go to him.

43. This detective told Ms. ELLIS that Mr. Smith was still alive and in critical condition, which was not true.

44. Hours later, a second detective came into the room where Ms ELLIS was held, to question her again.

45. Ms. ELLIS does not know this second detective's name, but upon information and belief based on Chicago police reports, this detective was defendant DANIEL R. JENSEN.

46. This detective relentlessly grilled and badgered Ms. ELLIS, and tried to force her to say that Gary J. Smith had a gun, when that was not true.

47. This intense questioning was against Ms. ELLIS's will and she did not consent to this intense questioning.

48. Ms. ELLIS pleaded with this second detective to be told something about the condition of Mr. Smith and to be allowed to go to him.

49. This detective told Ms. ELLIS that Mr. Smith was still alive and in critical condition, which was not true.

50. These two detectives had been instructed by some defendant police official or officials to detain and question Ms. ELLIS, and to coerce her to say that Mr. Smith had a gun.

51. During her detention, Ms. ELLIS was not given any food to eat.

52. During her detention, Ms. ELLIS was not placed in a cell where there was a bed on which she could rest.

53. During her detention, Ms. ELLIS was isolated from the outside world. She was not allowed to make any telephone calls to alert friends and family members that she was alive and to find out the condition of Mr. Smith.

54. The officers who transported Ms. ELLIS to the police station had contact with Ms. ELLIS at the police station, but they did not release her.

55. After 7+ hours, during which Ms. ELLIS consistently said that Mr. Smith did not have a gun and did not pull a gun on any police officers, she was released.

56. For some unexplained reason, no written and signed statement was ever taken from Ms. ELLIS and her interview was not audio-recorded or video-recorded.

57. Ms. ELLIS was never accused of any crimes and she was not charged with any crimes.

58. Upon her release, Ms. ELLIS was given back her purse and her cell phone. She saw that these items had been searched and tampered with.

59. Ms. ELLIS was told just before she was released that Gary J. Smith had died, and she was overcome with grief.

60. Defendant ALEXANDER was the Deputy Superintendent of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

61. Defendant WEST was the District Commander for the 15th District of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

62. Defendant KLICH was a Captain of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

63. Defendant YAMASHIROYA was a Commander of Detectives of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

64. Defendant ROBERTS was a Sergeant of Detectives of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

65. Defendant HOLY was a Sergeant of Detectives of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

66. Defendant GONZALEZ was a Sergeant of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

67. Defendant DURST was a Sergeant of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and

decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

68. Defendant KEEFE was a Sergeant of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

69. Defendant ALLEN was a Sergeant of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

70. Defendant GOLDSMITH was a Sergeant of the Chicago Police Department, who was at the scene of the police shooting and was in charge of official police actions and decisions, including the decision of whether Ms. ELLIS would be taken in police custody against her will to the police station and questioned.

71. Defendants REYES, JENSEN, TAKAKI, REGAL, and SPAIN were Detectives of Chicago Police Department assigned to this case, who either illegally detained and questioned Ms. ELLIS against her will about the shooting death of Gary J. Smith, or failed to intervene in said unconstitutional conduct.

72. By reason of the above-described acts and omissions of the individual defendants, plaintiff sustained physical and emotional injuries, humiliation, and indignities, and suffered great physical, mental, and emotional pain and suffering, all to her damage.

73. The aforementioned acts of the defendant police officers were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for plaintiff's rights, and thus justify the awarding of exemplary and punitive damages.

74. The constitutional violations set forth above were committed pursuant to the unconstitutional policies and practices of defendant CITY OF CHICAGO. There were

express policies and implied policies and widespread practices so prevalent as to comprise municipal policy that caused the constitutional violations. These express policies and implied policies and widespread practices were the moving force behind the constitutional violations.

75. As a matter of both policy and practice, the CITY OF CHICAGO directly encouraged, and thereby was the moving force behind, the constitutional violations at issue here by failing to adequately train, supervise, and control its employees.

76. As a matter of both policy and practice, the CITY OF CHICAGO facilitated the very type of misconduct at issue here by failing to adequately supervise and hold accountable its employees, thereby leading them to believe that their actions will never be scrutinized and, in that way, directly encouraged continuing abuses such as those which affected plaintiff.

77. Because of the above-described acts and omissions of the individual defendants, and because of the unconstitutional policies, procedures, and practices of defendant CITY OF CHICAGO, plaintiff was required to retain an attorney to institute, prosecute, and render legal assistance to her in the within action, so that she might vindicate the loss and impairment of his rights. By reason thereof, plaintiff requests payment by defendants of a reasonable sum for attorneys' fees pursuant to 42 U.S.C. § 1988, the Equal Access to Justice Act, or any other provision set by law.

<u>COUNT I</u>
**Plaintiff, KRYSTAL ELLIS, Against All Defendants for Illegal Seizure of Person and Detention**

78. Plaintiff, KRYSTAL ELLIS, incorporates and realleges paragraphs 1 – 77, as though set forth herein in their entirety.

79. The seizure and detention of plaintiff were without a warrant, without probable cause, and unreasonable.

### Individuals Personally Liable

80. Each individual defendant is liable for his/her direct acts or omissions towards plaintiff causing the constitutional violation.

### Individuals Liable for Failure to Intervene

81. Each individual defendant had reason to know that the seizure and detention of plaintiff by other police officers was without a warrant, without consent, and without probable cause.

82. Each individual defendant had a reasonable opportunity to prevent the illegal seizure and detention by other officers from occurring, but failed to do so.

### Individuals Personally Liable as Supervisor

83. Defendants ALEXANDER, WEST, KLICH, YAMASHIROYA, ROBERTS, HOLY, GONZALEZ, DURST, KEEFE, ALLEN, and GOLDSMITH were supervisory officer who ordered, approved, condoned, or turned a blind eye to unconstitutional conduct, that is, the illegal seizure and detention of Ms. ELLIS, and therefore, each is liable as a supervisor.

84. By reason of the conduct of defendants as set forth above, plaintiff KRYSTAL ELLIS was deprived of rights, privileges and immunities secured to her by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, all individual defendants, and each of them, is liable to plaintiff pursuant to 42 U.S.C. §1983.

### CITY OF CHICAGO Liable under *Monell*

85. As described herein, plaintiff was seized and detained in a manner that violated the Fourth Amendment. The constitutional violations set forth herein were committed pursuant to the unconstitutional policies and practices of defendant CITY OF CHICAGO. There were express policies and implied policies and widespread practices so prevalent as to comprise municipal policy that caused the constitutional violations. These

express policies and implied policies and widespread practices were the moving force behind the constitutional violations.

86. As a matter of both policy and practice, the CITY OF CHICAGO directly encouraged, and thereby was the moving force behind the constitutional violations at issue here by failing to adequately train, supervise, and control its employees.

87. As a matter of both policy and practice, the CITY OF CHICAGO facilitated the very type of misconduct at issue here by failing to adequately supervise and hold accountable its employees, thereby leading them to believe that their actions will never be scrutinized and, in that way, directly encouraged continuing abuses such as those which affected plaintiff.

88. The misconduct described was undertaken pursuant to the following practices, policies, and widespread practice of the Chicago Police Department:

    a. Failure to have in place an independent procedure to investigate police shootings.

    b. Failure to have in place an independent procedure to investigate police shootings that treats witnesses humanely and with respect.

    c. Failure to have in place an independent procedure to investigate police shootings that precludes an immediate *de facto* determination on the scene by police personnel that a police shooting is a justifiable homicide.

    d. Failure to establish an unbiased procedure by which all witnesses are interviewed and all evidence gathered in a neutral manner to identify the witnesses and preserve the evidence for an independent investigation.

    e. Failure to eliminate a biased witness interviewing process, by which witnesses who will testify in favor of the police are treated preferentially and those who will testify against the police are either ignored, chased or removed from the scene without identification, or coerced as plaintiff was coerced, in an attempt to extract a statement that is not true but is favorable to the police perspective of what transpired.

    f. Failure to have in place a procedure by which witnesses cannot be taken into custody to be interviewed when they have committed no crimes and by which witnesses cannot be detained without their consent.

  g. Failure to have a clear chain of command at a police shooting to make decisions such as whether a witness will be detained against her will, for which someone will be held accountable.

  h. Failure to adequately train, supervise, and control its officers on preventing a violation of a witness' Constitutional right in situations that are emotionally trying for its officers.

  i. Failure to adequately punish and discipline prior instances of misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting plaintiff.

  j. Failure to eliminate the "code of silence" in the Chicago Police Department, which has been acknowledged in public by the Mayor of the City of Chicago as well as police officials, by which officers fail to report misconduct committed by other officers, especially supervisory officers, such as the misconduct at issue in this case.

89. The practices, policies, and customs described above were widespread, permanent, and well-settled, and were known, or should have been known, to the municipal policy-makers. The actions of the individual defendants as alleged in this complaint, and the actions of the CITY OF CHICAGO and its supervisory employees in failing to train, supervise, and discipline employees with respect to said actions, has resulted in recurring situations and not isolated instances of failure to act.

90. In recent cases involving other police shootings, there have been similar allegations as set forth herein. In the case of *Antonio LeGrier, Individually, and as Special Administrator of the Estate of Quintonio LeGrier v. City of Chicago*, 2015-L-012964, a Circuit Court of Cook County Law Division case, it is alleged that Chicago Police officers illegally arrested and detained Quintonio LeGrier's father as a witness after Quintonio was fatally shot by the police. Mr. LeGrier was taken from his dying son against his will even though there was no legal justification for arresting him. In the case of *The Estate of Laquan McDonald,* 2014-P-007092, a widely publicized illegal police shooting, a key eye witness who saw the police officer shoot Mr. McDonald was chased from the scene by the police, in the hope that he would be lost as a witness. In the case of *Elrod v. Yerke,* 06 C 2505, the

wife of the deceased was taken into custody against her will even though she had committed no crimes.

91. Municipal policy-makers are aware of, condone, and facilitate by their inaction the failures described above. The CITY OF CHICAGO has failed to act to remedy the patterns of abuse described above, despite actual knowledge of same, thereby causing the types of injuries alleged here.

92. By reason of the policy and practice of the Chicago Police Department, plaintiff, KRYSTAL ELLIS, was deprived of rights, privileges and immunities secured to her by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the CITY OF CHICAGO is liable to plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT II
### Plaintiff, KRYSTAL ELLIS, Against All Defendants for Illegal Search of Vehicle and Other Personal Property

93. Plaintiff, KRYSTAL ELLIS, incorporates and realleges paragraphs 1 – 77, as though set forth herein in their entirety.

94. The search of plaintiff's vehicle and personal property was without a warrant, without probable cause, without consent, and unreasonable.

### Individuals Personally Liable

95. Each individual defendant is liable for his/her direct acts or omissions towards plaintiff causing the constitutional violation.

### Individuals Liable for Failure to Intervene

96. Each individual defendant had reason to know that the illegal search of plaintiff's vehicle and other personal property by other police officers was without a warrant, without probable cause, without consent, and unreasonable.

97. Each individual defendant had a reasonable opportunity to prevent the illegal search by other officers from occurring, but failed to do so.

### Individuals Personally Liable as Supervisor

98. Defendants ALEXANDER, WEST, KLICH, YAMASHIROYA, ROBERTS, HOLY, GONZALEZ, DURST, KEEFE, ALLEN, and GOLDSMITH were supervisory officer who ordered, approved, condoned, or turned a blind eye to unconstitutional conduct, that is, the illegal search of plaintiff's vehicle and other personal property, and therefore, each is liable as a supervisor.

99. By reason of the conduct of defendants as set forth above, plaintiff KRYSTAL ELLIS was deprived of rights, privileges and immunities secured to her by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, all individual defendants, and each of them, is liable to plaintiff pursuant to 42 U.S.C. §1983.

### CITY OF CHICAGO Liable under *Monell*

100. As described herein, plaintiff's vehicle and personal property were searched in a manner that violated the Fourth Amendment. The constitutional violations set forth herein were committed pursuant to the unconstitutional policies and practices of defendant CITY OF CHICAGO. There were express policies and implied policies and widespread practices so prevalent as to comprise municipal policy that caused the constitutional violations. These express policies and implied policies and widespread practices were the moving force behind the constitutional violations.

101. Plaintiff incorporates and realleges paragraphs 85 - 92 as her *Monell* allegations for this claim.

102. By reason of the policy and practice of the Chicago Police Department, plaintiff, KRYSTAL ELLIS, was deprived of rights, privileges and immunities secured to her by the Fourth and Fourteenth Amendments to the Constitution of the United States and

laws enacted thereunder. Therefore, the CITY OF CHICAGO is liable to plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT III
### Plaintiff, KRYSTAL ELLIS, Against All Defendants for Illegal Seizure of Personal Property

103. Plaintiff, KRYSTAL ELLIS, incorporates and realleges paragraphs 1 – 77, as though set forth herein in their entirety.

104. The seizure of plaintiff's property was without a warrant, without probable cause, without consent, and unreasonable.

### Individuals Personally Liable

105. Each individual defendant is liable for his/her direct acts or omissions towards plaintiff causing the constitutional violation.

### Individuals Liable for Failure to Intervene

106. Each individual defendant had reason to know that the illegal seizure of plaintiff's personal property by other police officers was without a warrant, without probable cause, without consent, and unreasonable.

107. Each individual defendant had a reasonable opportunity to prevent the illegal seizure by other officers from occurring, but failed to do so.

### Individuals Personally Liable as Supervisor

108. Defendants ALEXANDER, WEST, KLICH, YAMASHIROYA, ROBERTS, HOLY, GONZALEZ, DURST, KEEFE, ALLEN, and GOLDSMITH were supervisory officer who ordered, approved, condoned, or turned a blind eye to unconstitutional conduct, that is, the illegal seizure of plaintiff's personal property, and therefore, each is liable as a supervisor.

109. By reason of the conduct of defendants, as set forth above, plaintiff KRYSTAL ELLIS was deprived of rights, privileges and immunities secured to her by the

Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, all individual defendants, and each of them, is liable to plaintiff pursuant to 42 U.S.C. §1983.

### CITY OF CHICAGO Liable under *Monell*

110. As described herein, plaintiff's personal property was seized in a manner that violated the Fourth Amendment. The constitutional violations set forth herein were committed pursuant to the unconstitutional policies and practices of defendant CITY OF CHICAGO. There were express policies and implied policies and widespread practices so prevalent as to comprise municipal policy that caused the constitutional violations. These express policies and implied policies and widespread practices were the moving force behind the constitutional violations.

111. Plaintiff incorporates and realleges paragraphs 85 - 92 as her *Monell* allegations for this claim.

112. By reason of the policy and practice of the Chicago Police Department, plaintiff, KRYSTAL ELLIS, was deprived of rights, privileges and immunities secured to her by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the CITY OF CHICAGO is liable to plaintiff pursuant to 42 U.S.C. § 1983.

### COUNT IV
### Plaintiff, KRYSTAL ELLIS, Against Defendant CITY OF CHICAGO for Indemnification (735 ILCS 10/9-102)

113. Plaintiff, KRYSTAL ELLIS, incorporates and realleges paragraphs 1 – 77, as though set forth herein in their entirety.

114. In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

115. All individual defendants were employees of the CITY OF CHICAGO and acted within the scope of their employment in committing the misconduct described herein.

116. Defendant CITY OF CHICAGO is thus liable under the theory of indemnification.

WHEREFORE, plaintiff, KRYSTAL BROWN, by and through her attorney, Irene K. Dymkar, requests judgment as follows against defendants on each and every claim:

1. That defendants be required to pay plaintiff general damages, including emotional distress, in a sum to be ascertained at a trial of this matter,

2. That defendants be required to pay plaintiff special damages,

3. That defendants be required to pay the plaintiff attorneys' fees pursuant to 42 U.S.C. § 1988, the Equal Access to Justice Act, or any other applicable provision,

4. That defendants be required to pay plaintiff exemplary and punitive damages in a sum to be ascertained at a trial of this matter,

5. That a declaratory judgment be issued declaring defendant CITY OF CHICAGO's express policies and implied policies and widespread practices described herein as unconstitutional,

6. That defendants be required to pay plaintiff the costs of the suit herein incurred, and

7. That plaintiff be granted such other and further relief as this Court may deem just and proper.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**.

Dated: September 21, 2016                                        /s/   Irene K. Dymkar
                                                                       Irene K. Dymkar


Irene K. Dymkar
Attorney for Plaintiff
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3420
(312) 345-0123

**CERTIFICATE OF SERVICE**

      I, Irene K. Dymkar, an attorney, certify that on the 25th day of September, 2016, a copy of this first amended complaint was served upon the attorneys for defendants named below through the Court's electronic filing system:

      Brian P. Gainer
      Monica Gutowski
      Johnson & Bell, Ltd.
      33 W. Monroe, Suite 2700
      Chicago, IL 60603

      Marion C. Moore
      City of Chicago, Dept. of Law
      30 N. LaSalle, Suite 900
      Chicago, IL 60602

Dated: September 25, 2016                     /s/    Irene K. Dymkar
                                                                             Irene K. Dymkar