# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KRYSTAL ELLIS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 16-CV-05155 |
| DANA ALEXANDER, BARBARA WEST, ROBERT KLICH, GARY YAMASHIROYA, JOHN E. ROBERTS, BRIAN J. HOLY, ERIC A. REYES, DANIEL R. JENSEN, ROSS K. TAKAKI, MARK A. REGAL, BRIAN S. SPAIN, LUIS GONZALEZ, DANIEL DURST, KEVIN KEEFE, JEFFREY ALLEN, FLOYD GOLDSMITH, ALMA RODRIGUEZ, MARINA MAKROPOULOS, BRANDON L. DOUGHERTY, ELIZABETH SALGADO, JOHNATHAN J. ELARDE, SERGUEY KLEMENS, TIMOTHY M. HAWKINS, MICHAEL WALSH JR., NATHANIEL WARNER, AND CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Krystal Ellis has filed suit alleging that the City of Chicago and over two dozen members of the Chicago Police Department violated her constitutional rights in the wake of her boyfriend's death at the hands of CPD officers. First Amended Complaint ("FAC"), ECF No. 62. According to Ellis, after CPD officers shot and killed her boyfriend, she was detained without probable cause and locked in an interrogation room for seven hours. *Id*. ¶¶ 30-55. Ellis also alleges that CPD officers searched her car and personal property without probable cause. *Id*. ¶¶ 27-29.

Shortly over a year after she filed this lawsuit, Ellis filed for Chapter 7 bankruptcy in the Northern District of Illinois. Defs.' Statement of Facts ¶ 23, ECF No. 112. She was represented in bankruptcy court by Geraci Law, LLC, a high volume bankruptcy firm that she learned about from a television commercial. The schedules of Ellis's bankruptcy petition required her to describe and list all of her assets. The petition specifically required her to disclose "any legal or equitable interest in . . . claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." *Id.* ¶ 26. It also asked whether she had been "a party in any lawsuit, court action, or administrative proceeding" in the year prior to her bankruptcy filing. *Id.* ¶ 28. Nonetheless, Ellis failed to disclose this suit in her bankruptcy petition. Ellis signed a declaration under penalty of perjury attesting to the truthfulness of the statements set forth in her bankruptcy petition. *Id.* ¶ 31. In the weeks immediately before her bankruptcy creditor meeting, Ellis was deposed in this lawsuit and conducted a site visit of the police precinct where she was detained. *Id.* ¶ 18. At the creditor meeting, Ellis was asked whether she had any "personal injury actions or lawsuits of any kind against anyone that you have filed or could file?" Ellis answered no. Audio of Creditor Meeting 1:38-1:44, ECF No. 134-1.

Defendants filed the instant motion for summary judgment based on Ellis's failure to disclose this case in her bankruptcy proceedings. As soon as Ellis's counsel in this action learned of the bankruptcy, Ellis and counsel contacted Geraci Law. Pl's Statement of Additional Facts ¶¶ 8-14, ECF No. 131. Counsel learned that Geraci Law had moved, without Ellis's knowledge, to withdraw from Ellis's bankruptcy case due to irreconcilable differences. *Id.* ¶ 15. Counsel spoke to the bankruptcy trustee, who had to recuse herself from the matter due to a conflict of interest. *Id.* ¶ 16. A new trustee subsequently re-opened the case, and a third trustee was assigned to determine whether or not to administer Ellis's interest in this lawsuit as an asset to her creditors.

*Id.* ¶¶ 17-19. Counsel told the trustee that the case could be worth a small or large amount of money, depending on the results of discovery and the jury's findings. *Id.* ¶ 20. Ellis subsequently filed amended schedules that included this suit, valuing it at $12,500. *Id.* ¶ 27.[1] The trustee decided not to administer Ellis's interest in the case as an asset, abandoning it. *Id.* ¶ 25.

Ellis submitted a declaration indicating that she did not disclose this suit because Geraci Law misinformed her about her obligations. Her bankruptcy counsel asked her if she was a party to any "personal injury" lawsuits, which Geraci Law indicated was something akin to a car accident case. According to Ellis, she did not believe that this case, concerning an illegal detention and seizure and involving no physical injury, was a personal injury suit. Pl's Resp. to Defs.' Statement of Facts ¶ 26, ECF No. 130. She did tell her bankruptcy counsel about a recent car accident that had resulted in a settlement. She did not, however, disclose this suit to her bankruptcy counsel because she did not believe it was an asset that she could use to pay creditors.

The Court now considers defendants' summary judgment motion.[2]

## DISCUSSION

"The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions."

---

[1] Illinois law exempts from a bankruptcy estate "a payment, not to exceed $15,000 in value, on account of personal bodily injury of the debtor." 735 ILCS 5/12-1001(h)(4).

[2] On reply, defendants ask the Court to strike substantial portions of Ellis's response to their statement of undisputed facts, as well as Ellis's entire statement of additional facts, for non-compliance with local rules and inclusion of immaterial facts. The Court declines to do so. Defendants cite to Local Rule 56.1 for the proposition that Ellis was required to either admit their statements of undisputed fact or deny them with citation for the record. Ellis's responses, however, complied with Rule 56.1, as they dispute defendants' proposed facts (or inferences to be drawn therefrom) with citations to the record. Moreover, as explained herein, the portions of Ellis's statement of additional facts that the defendants argue are immaterial—concerning Ellis's bankruptcy representation and the steps Ellis and counsel took after defendants filed their motion for summary judgment—are relevant to the disposition of defendants' motion.

*Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014). A prototypical application of judicial estoppel bars a plaintiff from pursuing a legal claim that the plaintiff deliberately failed to disclose in a bankruptcy petition. *Id*. Manipulation of the kind sufficient to invoke judicial estoppel occurs "when a debtor deliberately conceals a contingent or unliquidated claim during bankruptcy proceedings and then later seeks to profit from that claim after obtaining a discharge of her debts." *Id*.

So when does a failure to disclose a lawsuit in bankruptcy constitute deliberate concealment? The Seventh Circuit provides several data points. First, in *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006), the court determined that a plaintiff was judicially estopped from pursuing a claim she failed to disclose in bankruptcy. There, although the plaintiff relied on erroneous advice from bankruptcy counsel in failing to disclose the suit, she never moved to re-open the bankruptcy to disclose the suit and make her creditors whole. *Id*. at 449. Under these circumstances—where the plaintiff (intentionally or otherwise) misrepresented her position in bankruptcy, and then sought to benefit without giving the bankruptcy trustee the opportunity to pursue the case on behalf of her creditors—the Seventh Circuit concluded that the plaintiff was judicially estopped from recovering.

By contrast, the court determined that the plaintiff in *Spaine* could proceed notwithstanding her initial failure to disclose her employment discrimination lawsuit in bankruptcy. 756 F.3d at 547-48. In *Spaine*, the plaintiff submitted an affidavit indicating that she had orally disclosed the lawsuit to her bankruptcy trustee at a creditors meeting, but omitted the suit from her schedules. With knowledge of the discrimination suit, the trustee concluded that the plaintiff had no assets and discharged her unsecured debts. The Seventh Circuit ruled that the plaintiff's oral disclosure provided evidence—sufficient to stave off summary judgment—that

her failure to list the suit on her bankruptcy schedules was innocent, and not a deliberate deception. *Id.*

Perhaps most helpful is *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357 (7th Cir. 2015), where the court again ruled that judicial estoppel did not bar recovery for a plaintiff who initially failed to disclose a lawsuit in bankruptcy. After the *Metrou* plaintiff, David Matichak, was discharged from bankruptcy, he filed a tort suit based on an incident that occurred prior to his bankruptcy. Matichak failed to disclose his possible (and eventually real) tort claims; his schedules contained only workers' compensation claims based on the incident. He failed to include a possible tort lawsuit in his schedules because his lawyers failed to inform him that he might be entitled to a recovery for the incident beyond workers' compensation. Defendants in the tort suit moved for summary judgment on judicial estoppel grounds. Matichak then notified the bankruptcy trustee, who reopened the bankruptcy and moved to replace Matichak as the plaintiff in the tort suit. The district court permitted the substitution, but limited damages to value of the plaintiff's unpaid debts. This had the effect of denying Matichak recovery of any damages for his own benefit.

The Seventh Circuit concluded that the district court erred in limiting recovery such that only creditors—and not Matichak—could benefit. In so doing, the court found that Matichak submitted sufficient evidence that he did not deliberately hide the tort claim from his creditors when he averred that his lawyers misadvised him about his possible avenues for recovery. It then concluded that "debtors who make innocent errors should not be punished by loss of their choses in action when they turn the claims over to the Trustees." *Id.* at 360. "[A] debtor who errs in good faith, and tries to set things right by surrendering the asset to the Trustee, remains entitled

to any surplus after creditors have been paid, just as would have occurred had the claim been disclosed on the bankruptcy schedules." *Id*.

Notwithstanding minor factual differences, *Metrou* compels rejection of the defendants' motion. Like Matichak, Ellis presented evidence that she omitted her suit from bankruptcy schedules due to confusion brought about by poor counsel—in Ellis's case, her misunderstanding of the meaning of a "personal injury" lawsuit. And like Matichak, Ellis re-opened her bankruptcy and amended her schedules to include her suit. If it was reasonable to conclude that Matichak's failure to disclose was innocent, the same could be said with regard to Ellis. True, in *Metrou*, the bankruptcy trustee decided to take over Matichak's case for the benefit of his creditors, whereas Ellis's trustee abandoned the lawsuit.[3] But that does not matter. In *Metrou*, the Seventh Circuit considered whether Matichak's failure to disclose could be deemed innocent, and concluded it could. Any attempt to distinguish *Metrou* "would be slicing the baloney mighty thin." *Sessions v. Dimaya*, -- S. Ct. --, 2018 WL 1800371, at *9 (2018).

On that note, the defendants point to evidence they say requires the conclusion that Ellis deliberately misled her creditors. Much of this evidence suggests that Ellis was engaged in activity related to this litigation in close temporal proximity to her bankruptcy: she conducted a site visit and was deposed in this litigation in the weeks immediately prior to her creditor

---

[3] The defendants contend that Ellis does not have standing to continue pursuing this case because the bankruptcy trustee did not properly notify creditors pursuant to 11 U.S.C. § 554 before abandoning this lawsuit as an asset. But the defendants cite to no evidence of the trustee's supposed deficiency, instead noting only that the bankruptcy docket does not spell out each and every step the trustee took. The Court will not conclude that the trustee procedurally erred in the absence of any evidence of that being the case. More importantly, even if the trustee did not adequately protect creditors before abandoning the asset, the provisions cited by the defendants "are intended for the benefit of creditors, none of whom complained or is complaining about the trustee's failure to comply with them." *Morlan v. Universal Guarantee Life Ins. Co.*, 298 F.3d 609, 621 (7th Cir. 2002). "They are not intended for the benefit of alleged violators of the debtor's legal rights, and so the defendants are the ones who lack standing—standing to object to the abandonment of [Ellis's] claim." *Id*.

meeting. This, however, is beside the point. Ellis does not suggest that she forgot about this case while filling out her bankruptcy schedules and at the creditor meeting; she posits that she did not disclose the lawsuit because bankruptcy counsel misadvised her about the definition of a personal injury suit and, as a result, she did not believe this lawsuit was an asset she could use to pay creditors. That the evidence conclusively establishes Ellis did not suffer a bout of amnesia with regard to this lawsuit says little about whether her omission was a deliberate ruse.[4]

Defendants also repeatedly make two related, and incorrect, legal arguments: that the erroneous advice of counsel cannot render a nondisclosure innocent, and that Ellis's decision to re-open her bankruptcy and disclose carries no weight. In support of the former, defendants cite to *Cannon-Stokes*' proclamation that "bad legal advice does not relieve the client of the consequences of her own acts." Defs.' Reply Br. at 4, ECF No. 133 (citing *Cannon-Stokes*, 453 F.3d at 449). But defendants omit the remainder of the paragraph, which defines the circumstances in which bad legal advice can absolve a plaintiff: "[A] debtor in bankruptcy is bound by her own representations, no matter why they were made, at least until the debtor moves to amend the disclosures and pay the creditors their due (a step that, to repeat, Cannon-Stokes has not taken)." *Id*. Unlike Cannon-Stokes, Ellis *has* taken that step. And so the Court can consider evidence that her initial failure to disclose was based on an innocent misunderstanding. Indeed, it is unclear how the *Metrou* court could have found Matichak's failure to disclose to be

---

[4] The defendants argue that it does not matter how Ellis was advised, as she was asked at the creditor meeting whether she was a party to "lawsuits of any kind against anyone." Defs.' Reply at 10. Ironically, in an attempt to prove Ellis deceptively omitted information, the defendants pointedly fail to include the beginning of the question posed to Ellis: "Do you have any *personal injury* actions or lawsuits of any kind against anyone that you have filed or could file?" Audio of Creditor Meeting 1:38-1:44, ECF No. 134-1. At least one reasonable interpretation of this question (in which "personal injury" modifies both "actions" and "lawsuits") comports with Ellis's affidavit indicating that she did not disclose the lawsuit because she incorrectly believed it was not a personal injury suit.

7

potentially innocent if both the subsequent re-opening of his bankruptcy and the bad advice of counsel were irrelevant. The case law demonstrates that Ellis's decision to re-open her bankruptcy permits the Court to consider evidence that her omission was an innocent result of bad legal advice.[5] And Ellis's declaration provides evidence sufficient to support a reasonable finding that Ellis's non-disclosure was not a deliberate misrepresentation.

*   *   *

For the foregoing reasons, the defendants' motion for summary judgment is denied. It bears noting here that denial of the defendants' summary judgment motion does not mean that the defendants may raise the judicial estoppel issue at trial. "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). *See also Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013) ("Judicial estoppel is a flexible equitable doctrine that is not 'reducible to any general formulation of principle' and accordingly does not lend itself to rigid rules.") (quoting *New Hampshire v. Maine,* 532 U.S. at 750). It is, in short, a doctrine for the Court, not for a jury, to assess and, if warranted, apply. And while the Court will not with this ruling foreclose the defendants from reasserting a motion premised on judicial estoppel, before considering any further motion, or holding an evidentiary hearing, it will require a more robust

---

[5] Indeed, the nature of personal bankruptcy practice makes it likely that omissions result either from a debtor's lack of sophistication or from erroneous legal advice. Debtors in personal bankruptcy are almost certain to be *pro se* or, like Ellis, represented by an attorney from a high volume practice. Even where a debtor is "represented," in many cases, the debtor may never even have met with counsel, instead providing information only to a non-attorney staff member. It is, therefore, "not difficult to imagine that some debtors . . . may not realize that a pending lawsuit qualifies as a 'contingent and unliquidated claim' that must be disclosed on a schedule of assets." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1186 (11th Cir. 2017) (*en banc*).

rebuttal to the plaintiff's sworn account of how she came to omit this case from her bankruptcy schedules. On the present record, application of the doctrine of judicial estoppel is not warranted.

Dated: April 25, 2018

John J. Tharp, Jr.
United States District Judge